Filed 5/12/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068557 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. HC21858) |
| JASON A. BERG, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Charles G. Rogers, Judge. Affirmed.

Bonnie M. Dumanis, District Attorney, James E. Atkins, Craig E. Fisher and Jennifer R. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Randy Mize, Chief Deputy Public Defender, Abbey J. Noel and Robert Ford, Deputy Public Defenders, for Defendant and Respondent.

I.

INTRODUCTION

In 1997, the trial court sentenced Jason Berg to life without the possibility of parole (LWOP) for committing a first degree murder with special circumstances when he

was 17 years old. (See Pen. Code,[1] § 190.5, subd. (b) [providing that the penalty for a first degree murder with special circumstances for a person "16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life"].)

Berg filed a petition for habeas corpus in December 2014, in which he requested that the court vacate his sentence and order a new sentencing hearing on the ground that the sentencing court's imposition of an LWOP sentence was unconstitutional under *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*). In *Miller*, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments,' " (*id.* at p. 2460) and stated that the "appropriate occasions" for sentencing juveniles to LWOP are "uncommon." (*Id.* at p. 2469.)

The habeas court ruled that the sentencing court's statement of reasons for imposing an LWOP sentence was "inconsistent with the evolving Eight Amendment jurisprudence and the requirements of *Miller*, *supra*." The court granted the petition, vacated Berg's sentence, and ordered that the matter be set for resentencing.

On appeal, in their opening brief, the People contend that the habeas court erred in granting Berg's petition because *Miller* does not apply retroactively. However, while this appeal was pending, the United States Supreme Court held that *Miller* announced a

---

1    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

substantive rule of constitutional law that must be given retroactive effect. (*Montgomery v. Louisiana* (2016) 577 U.S. ___ [136 S.Ct. 718] (*Montgomery*)). Accordingly, we reject the People's argument that *Miller* does not apply retroactively.

The People also claim that, even assuming *Miller* applies retroactively, the sentencing court complied with *Miller* by considering "youth-oriented factors" before imposing an LWOP sentence. In *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*), the California Supreme Court stated, "We understand *Miller* to require a sentencing court to admit and consider relevant evidence," pertaining to five specific categories of evidence relevant to the determination of "whether a particular defendant is a ' "rare juvenile offender whose crime reflects irreparable corruption." ' " (*Id.* at p. 1388.) The *Gutierrez* court also concluded that an LWOP sentence may be imposed on a juvenile homicide offender only "when the sentencing court's discretion is properly exercised in accordance with *Miller.*" (*Id.* at p. 1379.) While the court carefully considered numerous factors in sentencing Berg, including Berg's youth, the court did not exercise its discretion in accordance with the principles espoused in *Miller* and *Gutierrez*, which were both decided long after Berg's sentencing. We therefore reject the People's contention that the trial court complied with *Miller* and *Gutierrez*.

Finally, in a supplemental brief, relying on a recent decision of another panel of this court in *In re Kirchner* (2016) 244 Cal.App.4th 1398, 1416 (*Kirchner*), the People contend that Berg's petition should be denied because section 1170, subdivision (d)(2) provides an adequate statutory remedy for *Miller* error. In *Montgomery*, the United States Supreme Court concluded that "[a] State may remedy a *Miller* violation by

3

permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them," and cited a Wyoming statute providing that juvenile homicide offenders are eligible for parole in that state after 25 years of imprisonment. (*Montgomery*, *supra*, 136 S.Ct. at p. 736.)

Unlike the Wyoming statute cited in *Montgomery*, section 1170, subdivision (d)(2) does *not* provide that California juvenile homicide offenders may be considered for parole after some specified period of time. Instead, the statute sets forth a process pursuant to which a select group of defendants sentenced to LWOP for crimes committed as juveniles may file petitions for recall and resentencing, which, if granted, may lead to the imposition of a new sentence containing a period of parole eligibility. (*Ibid.*) The statute expressly disqualifies certain defendants from obtaining relief pursuant to the statue (*id.*, subd. (d)(2)(A)(ii)), requires a defendant to file a petition "describing his or her remorse and work towards rehabilitation," (*id.*, subd. (d)(2)(B)), requires the petition to affirm that one of four qualifying factors is true (*id.*, subd. (d)(2)(B)(i)-(iv)), and sets forth a nonexclusive list of eight factors for a trial court to consider in determining whether to grant the petition (*id.*, subd. (d)(2)(F)(i)-(viii)). In short, while section 1170, subdivision (d)(2) provides a statutory procedure by which *some* defendants serving LWOP sentences for crimes committed as juveniles may obtain resentencing, we disagree with the *Kirchner* court's conclusion that the statute provides such defendants with "all the rights set forth in *Miller* and *Montgomery*." (*Kirchner*, *supra*, 244 Cal.App.4th at p. 1416.) For reasons that we explain in greater detail in part III.C., *post*, we conclude that

4

section 1170, subdivision (d)(2) does not provide an adequate statutory remedy for *Miller* error.

Accordingly, we affirm the trial court's order granting Berg's petition and directing that the matter be set for resentencing.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The commitment offenses*[2]

At the age of 17, Berg murdered victim Kettie Hancock during a burglary/robbery of a store at which Hancock was the manager.  Berg's girlfriend, who worked at the store, let Berg and an accomplice into the store.  Berg stabbed Hancock more than 21 times.

Approximately two weeks prior to the Hancock murder, Berg committed a robbery of a gas station.  During the robbery, Berg stabbed the victim, Richard Couch, at least twice, causing Couch to suffer a deep puncture wound to his left arm.

B.    *The underlying criminal case*

In October 1996, the People charged Berg with murder (§ 187) (count 1), and alleged the special circumstance that Berg committed the murder in the course of a robbery (§ 190.2, subd. (a)(17)), and during the commission of a burglary (§ 190.2, subd. (a)(17)).  The People also alleged that Berg personally used a knife during the murder (§ 12022, subd. (b)(1)).  In addition, the People charged Berg with conspiracy to commit robbery and burglary (§ 182, subd. (a)(1)) (count 2), robbery (§ 211) (count 3), and

---

[2]    Our factual summary is based on the probation report because Berg pled guilty to the commitment offenses and there was thus no trial in this case.

burglary (§ 459) (count 4) and alleged a knife use allegation with respect to each count (§ 12022, subd. (b)(1)). Counts 1 through 4 were all related to the Hancock murder.

With respect to the incident involving Couch, the People charged Berg with attempted murder (§§ 664, 187, subd. (a)) (count 5), assault with a deadly weapon and by means of force likely to produce great bodily injury (§ 245, subd. (a)) (count 6), and robbery (§ 211) (count 7). The People also alleged numerous weapon and injury enhancements with respect to these counts.

In May 1997, Berg pled guilty to all charges and allegations.

As discussed in greater detail in part III.B., *post*, the trial court sentenced Berg to LWOP on the murder conviction. Pursuant to section 654, the court stayed execution of the sentence on the knife enhancement (§ 12022, subd. (b)(1)) on count 1. The court also stayed execution of the sentences on both the substantive offenses and enhancements on counts 2 through 4 pursuant to section 654. With respect to the attempted murder on count 5 and related enhancements, the court imposed an aggregate term of 11 years to be served concurrently with the LWOP sentence. The court stayed execution of the sentence on count 6 pursuant to section 654 and imposed a seven-year sentence on count 7, to be served concurrently with the LWOP sentence.

C.      *Berg's petition for habeas corpus*

In December 2014, Berg filed a petition for habeas corpus and a supporting brief in which he contended that the sentencing court's imposition of an LWOP sentence for a crime that he committed as a juvenile constituted a violation of the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States

6

Constitution under *Miller* and *Gutierrez*.[3]  Berg supported his petition with relevant portions of the record in the underlying criminal case.

After the People filed an informal response and Berg filed a reply, the trial court issued an order to show cause as to why Berg's sentence should not be vacated and a resentencing hearing held.

The People filed a return and a supporting brief in which they argued that the sentencing court had given "full consideration to the relevant youth-related factors applicable to [Berg]," and contended that "further guidance by *Miller* and *Gutierrez* decisions would not have altered the court's sentencing choice."  (Boldface & capitalization omitted.)  In the alternative, the People argued that *Miller* should not be applied retroactively to Berg's case, which was final at the time *Miller* was decided.

After Berg filed a denial and the habeas court held a hearing on the petition, the court issued an order granting the petition.  In its order granting the petition, the habeas court concluded that "current Eighth Amendment jurisprudence regarding the imposition of life sentences on juvenile offenders must be applied retroactively to persons serving actual or functional LWOP sentences."  The habeas court further concluded that the sentencing court's statement of reasons for imposing an LWOP sentence on Berg did not comport with the requirements of *Miller*.  The court ordered "that a writ of habeas corpus

---

3    Berg also claimed that the punishment violated the prohibition of cruel or unusual punishments under Article I, section 17 of the California Constitution.  However, only the federal claim is relevant to this appeal.

7

be issued; that [Berg's] sentence of LWOP be vacated; and that the matter be set for re-sentencing in the Superior Court."

The People appeal the trial court's order granting Berg's petition for habeas corpus.

III.

DISCUSSION

A.     *The habeas court did not err in concluding that* Miller *applies retroactively*

As noted in part I., *ante*, in their opening brief, the People contend that the trial court erred in granting Berg's petition because *Miller* does not apply retroactively to Berg's case.  However, the People concede in their supplemental brief that "the United States Supreme Court in *Montgomery* held that *Miller* is retroactive . . . ."

We agree with the People's concession.  In *Montgomery*, the United States Supreme Court held that *Miller's* "holding is retroactive to juvenile offenders whose convictions and sentences were final when *Miller* was decided."  (*Montgomery*, *supra*, 136 S.Ct. at pp. 725, 732-736 [concluding that *Miller* established a substantive rule of law that must be given retroactive effect under the federal constitution].)

Accordingly, the habeas court did not err in concluding that *Miller* applies retroactively.

B.     *The habeas court properly concluded that, in sentencing Berg, the trial court did not exercise its discretion in accordance with the juvenile LWOP sentencing requirements later established in* Miller

The People contend that the sentencing court "[c]omplied with *Miller* and *Gutierrez*" because the sentencing court took "into account *Miller*-type youth-oriented factors, and decided that LWOP was the appropriate sentence."  The People's contention

8

raises a question of law. We review questions of law de novo. (See e.g., *People v. Butler* (2003) 31 Cal.4th 1119, 1127 (*Butler*).)

1.      *Governing Law*

In *Montgomery*, the United States Supreme Court held that before a defendant may be sentenced to LWOP for a crime committed as a juvenile, the sentencing court must hold a hearing at which the court considers the principles espoused in *Miller* concerning youth:

> "A hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. [*Miller*, *supra*, 132 S.Ct. at p. 2460.] The hearing does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." (*Montgomery*, *supra*, 136 S.Ct. at p. 735.)

In *Gutierrez*, the California Supreme Court applied *Miller* in disapproving *People v. Guinn* (1994) 28 Cal.App.4th 1130 (*Guinn*). In *Guinn*, the Court of Appeal held that section 190.5, subdivision (b) creates a presumption in favor of life without parole for those sentenced under its provisions. The *Gutierrez* court summarized its holding and disposition as follows:

> "[W]e hold that section 190.5[, subdivision (b)], properly construed, confers discretion on a trial court to sentence a 16- or 17-year-old juvenile convicted of special circumstance murder to life without parole or to 25 years to life, with no presumption in favor of life without parole. We further hold that *Miller* requires a trial court, in exercising its sentencing discretion, to consider the 'distinctive attributes of youth' and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders' before imposing life without parole on a juvenile offender. (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2465].)

9

Because the sentencing regime created by section 190.5[, subdivision (b)] authorizes and indeed requires consideration of the distinctive attributes of youth highlighted in *Miller*, we find no constitutional infirmity with section 190.5[, subdivision (b)] once it is understood not to impose a presumption in favor of life without parole.

"Because the two defendants here were sentenced before *Miller* in accordance with the interpretation of section 190.5[, subdivision (b)] prevailing at the time (see *Guinn*, *supra*, 28 Cal.App.4th at p. 1142), we remand for resentencing in light of the principles set forth in *Miller* and this opinion." (*Gutierrez*, *supra*, 58 Cal.4th at pp. 1360-1361.)

The *Gutierrez* court further concluded that *Miller* requires that a court deciding whether to impose an LWOP sentence on a defendant for a crime committed as a juvenile consider the following five types of evidence pertaining to youth: (1) "offender's 'chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences,' " (*Gutierrez*, *supra*, 58 Cal.4th at p. 1388); (2) "any evidence or other information in the record regarding 'the family and home environment that surrounds [the defendant]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional,' " (*id.* at pp. 1388-1389); (3) "any evidence or other information in the record regarding 'the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct and the way familial and peer pressures may have affected him,' " (*id.* at p. 1389); (4) "any evidence or other information in the record as to whether the offender 'might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea

10

agreement) or his incapacity to assist his own attorneys,' " (*ibid.*); and (5) "any evidence or other information in the record bearing on 'the possibility of rehabilitation.' " (*Ibid.*)

In *People v. Chavez* (2014) 228 Cal.App.4th 18 (*Chavez*), this court applied *Miller* and *Gutierrez* and stated that the five aforementioned types of evidence "when considered together in a reasoned manner . . . [are a] useful and necessary means by which a sentencing court must determine whether transient immaturity requires some degree of leniency or irreparable corruption must be punished as severely as possible." (*Id.* at p. 33.) Because there was nothing in the record in *Chavez* that indicated "that the *trial court* itself directly considered this ultimate question," this court remanded the matter for resentencing. (*Id.* at p. 34, italics omitted.)

2. *Factual and procedural background*

a. *The sentencing court's statement of reasons for imposing an LWOP sentence*

At sentencing, the trial court stated that, pursuant to *Guinn*, Berg's sentence was "presumptive[ly] life without possibility of parole." The court added, "I want to make it clear, however, that in my view, if I had to weigh between the two [sentence alternatives under section 190.5, subdivision (b) (i.e. LWOP or a sentence of 25 years to life)] on an equal basis, the sentence in this case would be the same."

The court also noted that it was required to consider both aggravating and mitigating factors in determining an appropriate sentence. In the course of its discussion of such factors, the court made reference to several types of evidence related to Berg's youth. For example, the court referred to Berg's childhood as follows:

11

"The most important and significant item in mitigation relates to the defendant's childhood. And here I recognize — I was bowled over by the hellish childhood that this individual had. I have read thousands of probation reports. I have handled juvenile dependency cases. I have seen many, many sad situations, but this is probably the worst that I have ever seen, short of torture of a child. That was mental torture."

However, the court reasoned that, notwithstanding Berg's horrendous childhood, he had made a choice to commit the murder, stating: "The problem with all of this is that the defendant, at some point, began to make his own decisions. He was old enough at the age of 17 years eight months to decide [*sic*] he had examples of the other way." The court continued, "He had ceased being the child. The child was already damaged and gone. The adult made the decision to kill [the victim]."

In discussing whether to follow a psychologist's recommendation to impose a sentence other than LWOP, the court stated:

"If I look at this, the protection of society must be uppermost, and I cannot think that we have the means yet, at the state where we are today in history, particularly with the state of our prisons, to say that he could get enough therapy, and enough rehabilitation, to be a safe bet, even when he's an old man. It seems to me that too much damage has been done to take that risk. [¶] I don't disagree that that would be wonderful, but I do disagree that we have the means to accomplish it."

The court further stated, "I find age as a slightly mitigating factor in this case. [Berg] was young, but old enough to be sent to war in four months, and old enough to make the choice."

12

After a lengthy discussion of aggravating and mitigating factors, the court stated, "So, I must sentence [Berg] to prison without the possibility of parole. The aggr[a]vants outweigh the mitigants, so I must do that."

b.     *The habeas court's review of the sentencing court's statement of reasons*

In its order granting Berg's petition, the habeas court rejected the People's contention that the sentencing court had adequately considered the factors associated with youth discussed in *Miller*. The habeas court reasoned:

> "The court finds and concludes that [the sentencing judge's] decision, though careful and thoughtful in the extreme, did not give consideration to these factors—then unknown and, in this court's view, largely unforeseeable—when she pronounced judgment. Instead the thrust of the court's analysis was to consider aggravants and mitigants under [former] rules 421 and 423 of the California Rules of Court. [Citation.] For this reason alone, this court concludes the petition must be granted."

3.     *Application*

We acknowledge that the sentencing court's statements demonstrate that the court did consider Berg's youth, to some degree, prior to imposing an LWOP sentence. However, "*Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.' " (*Montgomery*, *supra*, 136 S.Ct. at p. 734.) Therefore, "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ' "unfortunate yet transient immaturity." ' " (*Ibid.*) Thus, before an LWOP sentence may be imposed on a

13

juvenile, a sentencing court must hold a hearing at which it considers whether the defendant is " ' "the rare juvenile offender whose crime reflects irreparable corruption . . . ." ' " (*Ibid.*)

The record in this case does not reflect that the sentencing court ever considered "the ultimate question posed by the courts in both *Miller* and *Gutierrez*, . . . : Did th[is] crime[ ] reflect transient immaturity or irreparable corruption?" (*Chavez*, *supra*, 228 Cal.App.4th at p. 33.) Rather than considering Berg's youth in determining whether he was the " ' "rare juvenile offender whose crime reflects irreparable corruption" ' " (*Gutierrez*, *supra*, 58 Cal.4th at p. 1388), the sentencing court considered Berg's youth in the context of determining whether, as the sentencing court stated, the "aggr[a]vants outweigh the mitigants." Thus, it is clear that in imposing an LWOP sentence on Berg, the trial court did not exercise its discretion "in accordance with *Miller*," as is required. (*Id.* at p. 1379.)[4]

In addition, given that Berg was sentenced prior to the decisions in *Miller* and *Gutierrez*, the record does not reflect that the sentencing court considered all relevant evidence related to whether the court could lawfully impose an LWOP sentence on Berg. (See *Gutierrez*, *supra*, 58 Cal.4th at pp. 1389-1390 [outlining five categories of youth-related evidence relevant to the determination of whether to impose an LWOP sentence

---

[4]    Given that the sentencing in this case occurred long before *Miller* and *Gutierrez* were decided, it is entirely understandable that the sentencing court did not address the principles espoused in these later decided cases. However, "[a] court commits error where it acts contrary to a higher court's articulation of the law, even if such error is understandable given the state of the law at the time the lower court acted." (*People v. Bryant* (2013) 222 Cal.App.4th 1196, 1208 (conc. opn. of Aaron, J.).)

14

on a defendant for a crime committed as a juvenile].) A new sentencing hearing will afford the opportunity for the parties to present, and the trial court to consider, such evidence.

Accordingly, we conclude that the habeas court properly determined that, in sentencing Berg, the trial court did not exercise its discretion in accordance with the juvenile LWOP sentencing requirements established in *Miller*.

C.    *Section 1170, subdivision (d)(2) does not provide an adequate remedy for* Miller *error*

In their supplemental brief, the People contend that "Berg's habeas petition should be denied because he has a statutory remedy [for *Miller* error] under section 1170, subdivision (d)(2)."[5]  (Citing *Kirchner*, *supra*, 244 Cal.App.4th 1398.)  The People's contention raises a pure question of law.  We review questions of law de novo.  (See, e.g., *Butler*, *supra*, 31 Cal.4th at p. 1127.)

1.    *The law governing collateral relief for* Miller *error*

As discussed in part III.B., *ante*, under *Miller*, *Gutierrez* and *Montgomery*, before imposing an LWOP sentence for a crime committed while the defendant was a juvenile, a "trial court must consider all relevant evidence bearing on the 'distinctive attributes of youth' discussed in *Miller* and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.' "  (*Gutierrez*, 58

---

5    Given that *Kirchner* was not decided until after the habeas court entered its order granting Berg's petition in this case, we exercise our discretion to consider this issue even though the People did not raise this contention in the trial court.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"].)

15

Cal.4th at p. 1390, quoting *Miller*, *supra*, 132 S.Ct. at p. 2465; accord *Montgomery*, *supra*, 136 S.Ct. at p. 735.) A trial court's failure to consider such factors constitutes error.

In *Montgomery*, the United States Supreme Court held "that *Miller* announced a substantive rule of constitutional law," that must be applied retroactively. (*Montgomery*, *supra*, 136 S.Ct. at p. 736.) The *Montgomery* court reversed the Louisiana Supreme Court's denial of an inmate's application for a supervisory writ seeking collateral review of his LWOP sentence. (*Id.* at pp. 727, 737.) The *Montgomery* court also clarified that states are not required to "relitigate sentences" (*id.* at p. 736) in order to remedy *Miller* error, but can simply permit juvenile homicide offenders to be considered for parole:

> "Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, *e.g.*, Wyo. Stat. Ann. § 6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.
>
> "Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change." (*Ibid.*)

16

2.    *Section 1170, subdivision (d)(2)*

Section 1170, subdivision (d)(2) outlines a process by which certain defendants serving an LWOP sentence for a crime committed as a juvenile may file a petition for recall and resentencing.

Section 1170, subdivision (d)(2)(A) describes the types of defendants who qualify to file such a petition.  Section 1170, subdivision (d)(2)(A)(i) requires that the defendant have served "at least 15 years of [the LWOP] sentence," prior to filing a petition.  Section 1170, subdivision (d)(2)(A)(ii) provides that the statute "shall not apply" to defendants who tortured their victim or to defendants whose victim was a public safety official.[6]

Section 1170, subdivision (d)(2)(B) outlines the required contents of a petition for recall and resentencing, including mandating that the defendant describe "his or her remorse and work towards rehabilitation," and state that one of four qualifying factors is true.  Section 1170, subdivision (d)(2)(B) provides:

---

[6]    Section 1170, subdivision (d)(2)(A) provides:

> "(i) When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing.

> "(ii) Notwithstanding clause (i), this paragraph shall not apply to defendants sentenced to life without parole for an offense where the defendant tortured, as described in Section 206, his or her victim or the victim was a public safety official, including any law enforcement personnel mentioned in Chapter 4.5 (commencing with Section 830) of Title 3, or any firefighter as described in Section 245.1, as well as any other officer in any segment of law enforcement who is employed by the federal government, the state, or any of its political subdivisions."

17

"The defendant shall file the original petition with the sentencing court. A copy of the petition shall be served on the agency that prosecuted the case. The petition shall include the defendant's statement that he or she was under 18 years of age at the time of the crime and was sentenced to life in prison without the possibility of parole, the defendant's statement describing his or her remorse and work towards rehabilitation, and the defendant's statement that one of the following is true:

"(i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.

"(ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.

"(iii) The defendant committed the offense with at least one adult codefendant.

"(iv) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, or showing evidence of remorse."

Section 1170, subdivision (d)(2)(C) provides that "[i]f any of the information required in subparagraph (B) is missing from the petition," the trial court "shall return the petition to the defendant and advise the defendant that the matter cannot be considered without the missing information."

Section 1170, subdivision (d)(2)(D) authorizes the People to file a reply to the petition.

Section 1170, subdivision (d)(2)(E) specifies the circumstances under which a court shall hold a hearing on the petition:

18

"If the court finds by a preponderance of the evidence that the statements in the petition are true, the court shall hold a hearing to consider whether to recall the sentence and commitment previously ordered and to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. Victims, or victim family members if the victim is deceased, shall retain the rights to participate in the hearing."

Section 1170, subdivision (d)(2)(F) outlines several factors that a court may consider in determining whether to recall and resentence a defendant:

"The factors that the court may consider when determining whether to recall and resentence include, but are not limited to, the following:

"(i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.

"(ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.

"(iii) The defendant committed the offense with at least one adult codefendant.

"(iv) Prior to the offense for which the sentence is being considered for recall, the defendant had insufficient adult support or supervision and had suffered from psychological or physical trauma, or significant stress.

"(v) The defendant suffers from cognitive limitations due to mental illness, developmental disabilities, or other factors that did not constitute a defense, but influenced the defendant's involvement in the offense.

"(vi) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, or showing evidence of remorse.

19

"(vii) The defendant has maintained family ties or connections with others through letter writing, calls, or visits, or has eliminated contact with individuals outside of prison who are currently involved with crime.

"(viii) The defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor."[7]

Section 1170, subdivision (d)(2)(G) describes the court's discretion to recall the sentence and resentence the defendant:

"The court shall have the discretion to recall the sentence and commitment previously ordered and to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. The discretion of the court shall be exercised in consideration of the criteria in subparagraph (B). Victims, or victim family members if the victim is deceased, shall be notified of the resentencing hearing and shall retain their rights to participate in the hearing."

Section 1170, subdivision (d)(2)(H) defines the circumstances under which a defendant may file a subsequent petition for recall of sentence after the denial of a petition:

"If the sentence is not recalled, the defendant may submit another petition for recall and resentencing to the sentencing court when the defendant has been committed to the custody of the department for at least 20 years. If recall and resentencing is not granted under that petition, the defendant may file another petition after having served 24 years. The final petition may be submitted, and the response to

---

[7] "In addition to the criteria in subparagraph (F), the court may consider any other criteria that the court deems relevant to its decision, so long as the court identifies them on the record, provides a statement of reasons for adopting them, and states why the defendant does or does not satisfy the criteria." (§ 1170, subd. (d)(2)(I).)

that petition shall be determined, during the 25th year of the defendant's sentence."

3.    *Section 1170, subdivision (d)(2) does not provide an adequate remedy for a defendant seeking collateral relief for* Miller *error*

"[H]abeas corpus is appropriate only when there are no other available and adequate remedies; it may not be used to avoid otherwise available and adequate remedies."  (*Michelle K. v. Superior Court* (2013) 221 Cal.App.4th 409, 433.) Thus, we must determine whether section 1170, subdivision (d)(2) provides an adequate remedy for a defendant, such as Berg, imprisoned under a sentence imposed in violation of *Miller* and its progeny.  For the reasons discussed below, we conclude that section 1170, subdivision (d)(2) does not provide an adequate remedy.

To begin with, to conclude to that section 1170, subdivision (d)(2) provides an adequate remedy for those serving sentences imposed in violation of *Miller* would be inconsistent with the United States Supreme Court's decision in *Montgomery*.  The *Montgomery* court indicated that states could remedy a *Miller* violation by "[e]xtending parole eligibility" to offenders serving LWOP sentences for crimes committed as juveniles.  (*Montgomery*, *supra*, 136 S.Ct. at p. 736.)  At no point in the *Montgomery* court's opinion did the court suggest that a state could remedy *Miller* error by permitting a defendant to utilize a statutory procedure that *might* lead to parole eligibility.  The actual remedy authorized in *Montgomery*, extending parole eligibility, provides an adequate remedy for *Miller* error because it is the defendant's ineligibility for parole that is the harm suffered by juvenile defendants sentenced to LWOP.  In contrast, providing a defendant with the opportunity to file a petition under section 1170, subdivision (d)(2)

21

that may *or may not* lead to the imposition of a new sentence containing a period of parole clearly does not guarantee such relief.

Given the stringent requirements of section 1170, subdivision (d)(2), if the statute were deemed to provide an adequate remedy for defendants serving a sentence imposed in violation of *Miller*, it is all but certain that many defendants would be required to continue to serve LWOP sentences without *any* sentencing court ever having considered whether such defendants were the " ' "rare juvenile offender[s] whose crime reflects irreparable corruption," ' " as is required. (*Montgomery*, *supra*, 136 S.Ct. at p. 724.)[8] Such a result would be inconsistent with *Montgomery*'s central tenet, namely, that a retroactive application of *Miller* is required in light of the "grave risk" that many inmates serving LWOP sentences from crimes committed as juveniles are "being held in violation of the Constitution." (*Id.* at p. 736.)

In addition to being inconsistent with *Montgomery*, concluding that section 1170, subdivision (d)(2) provides an adequate remedy for a *Miller* violation would also be contrary to *Gutierrez.* In *Gutierrez,* the California Supreme Court rejected the People's argument that the enactment of section 1170, subdivision (d)(2) eliminated the possibility that a defendant serving an LWOP sentence under California law for a crime committed

---

8       As described in part III.C.2., *ante*, section 1170, subdivision (d)(2) directs trial courts to consider a host of factors, some of which are completely unrelated to those discussed in *Miller*, before granting resentencing. (See, e.g., § 1170, subd. (d)(2)(F)(vii) [listing whether "[t]he defendant has maintained family ties or connections with others through letter writing, calls, or visits, or has eliminated contact with individuals outside of prison who are currently involved with crime," as a factor to consider in determining whether to grant a section 1170, subdivision (d)(2) petition].)

as a juvenile, had suffered a *Miller* violation.  (*Gutierrez, supra*, 58 Cal.4th at p. 1387.)

The *Gutierrez* court reasoned in part:

> "The Attorney General contends that section 1170[, subdivision
> (d)(2)] removes life without parole sentences for juvenile offenders
> from the ambit of *Miller*'s concerns because the statute provides a
> meaningful opportunity for such offenders to obtain release.  In
> support of this contention, the Attorney General relies on a 'cf.'
> citation in *Miller* to language in *Graham* [*v. Florida* (2010) 560 U.S.
> 48 (*Graham*)].[9]  (See *Miller*, *supra*, 567 U.S. at p. ___, 132 S.Ct.
> at p. 2469 ['Cf. *Graham*, 560 U.S., at ___ [130 S.Ct., at p. 2030] ("A
> State is not required to guarantee eventual freedom," but must
> provide "some meaningful opportunity to obtain release based on
> demonstrated maturity and rehabilitation").']; see also *Graham*,
> *supra*, 560 U.S. at p. 75 ['It is for the State, in the first instance, to
> explore the means and mechanisms for compliance'].)  However,
> *Graham* spoke of providing juvenile offenders with a 'meaningful
> opportunity to obtain release' as a constitutionally required
> alternative to—not as an after-the-fact corrective for—'*making the
> judgment at the outset* that those offenders never will be fit to reenter
> society.' (*Graham*, at p. 75, italics added.)  Likewise, *Miller*'s 'cf.'
> citation to the 'meaningful opportunity' language in *Graham*
> occurred in the context of prohibiting 'imposition of that harshest
> prison sentence' on juveniles under a mandatory scheme.  (*Miller*, at
> p. ___ [132 S.Ct. at p. 2469].)  Neither *Miller* nor *Graham* indicated
> that an opportunity to recall a sentence of life without parole 15 to
> 24 years into the future would somehow make more reliable or
> justifiable the imposition of that sentence and its underlying
> judgment of the offender's incorrigibility 'at the outset.' (*Graham*, at
> p. 75.)" (*Id.* at p. 1386.)

Similarly, in *People v. Lozano* (2016) 243 Cal.App.4th 1126, 1138 (*Lozano*), the

California Court of Appeal concluded that a prisoner serving an LWOP sentence imposed

for a crime committed as a juvenile "does have a remedy under section 1170, subdivision

---

9    In *Graham*, the United States Supreme Court held that "the Eighth Amendment
prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide
offender." (*Graham*, *supra*, 560 U.S. at p. 75.)

(d)(2), *but that remedy is not exclusive, nor is it a substitute for her Eighth Amendment right to a sentencing hearing considering amenability to rehabilitation in the first instance*." (*Ibid.*, italics added.)

In addition to being inconsistent with case law from the United States Supreme Court, the California Supreme Court, and the California Court of Appeal, concluding that section 1170, subdivision (d)(2) provides an adequate remedy to those serving sentences imposed in violation of *Miller* raises serious constitutional concerns. Clearly, section 1170, subdivision (d)(2) does not provide an adequate remedy for those defendants serving juvenile LWOP sentences to whom the statute, by its terms, does not apply. Consider a petitioner such as the defendant in *Montgomery*, whose victim was a deputy sheriff. (*Montgomery*, *supra*, 136 S.Ct. at p. 725.) A defendant who kills a law enforcement officer is expressly disqualified from bringing a section 1170, subdivision (d)(2) petition. (See § 1170, subdivision (d)(2)(A)(ii).)[10] To conclude that a statutory procedure for which the defendant is expressly disqualified affords an adequate remedy for an Eighth Amendment violation would violate basic principles of due process. On the other hand, if *Kirchner* is intended to limit the habeas corpus remedies only for those

---

[10] Those prisoners who are expressly disqualified by section 1170, subdivision (d)(2)(A)(ii), are not the only prisoners effectively unable to obtain relief under section 1170, subdivision (d)(2). If a prisoner's petition does not contain a "statement describing his or her remorse and work towards rehabilitation," (*id.*, subd. (d)(2)(B), the petition is facially deficient and a trial court is required to "return the petition to the defendant . . . . " (*Id.*, subd. (d)(2)(C).) Thus, a prisoner who maintains his innocence, and therefore, would not be in a position to express remorse, would also be ineligible to obtain relief for *Miller* error via section 1170, subdivision (d)(2).

defendants who are *not* disqualified from filing a section 1170, subdivision (d)(2) petition, this would raise equal protection concerns.

In any event, section 1170, subdivision (d)(2) does not provide an adequate remedy for *Miller* error even for those defendants who *might* ultimately obtain a resentencing pursuant to the statute. There is nothing in *Miller* or its progeny that suggests that a state may condition a prisoner's right to receive a lawful sentencing hearing upon the prisoner's success in a separate collateral proceeding. Thus, as Berg correctly argues in his supplemental brief, "Mr. Berg must be granted a resentencing hearing where the five *Miller* factors [outlined in *Gutierrez*] are the controlling factors before the sentencing court, not the miscellaneous factors dictated in . . . section 1170, subdivision (d)(2)."

    4.    *We decline to follow* Kirchner

As noted in part I., *ante*, in *Kirchner*, *supra*, a panel of this court concluded that section 1170, subdivision (d)(2) "meets the requirements of *Miller* and *Montgomery* and is therefore an adequate remedy which Kirchner[11] must pursue before resorting to habeas corpus relief." (*Kirchner*, *supra*, 244 Cal.App.4th at pp. 1418-1419.) *Kirchner*'s

---

11    The *Kirchner* court stated that its opinion was "limited to inmates, who, like Kirchner, have been incarcerated for at least 15 years," of an LWOP sentence imposed for a crime committed by the inmate as a juvenile. (*Kirchner*, *supra*, 244 Cal.App.4th at p. 1405 and fn.1.) It is unclear under *Kirchner* whether a prisoner must wait 15 years before attempting to obtain relief for *Miller* error pursuant to section 1170, subdivision (d)(2) or whether more recently sentenced inmates may seek habeas relief without regard to the statute.

25

conclusion that section 1170, subdivision (d)(2) provides an adequate remedy for *Miller* error is unpersuasive for the following reasons.[12]

The *Kirchner* court stated that "although section 1170, subdivision (d)(2) does *not* provide an inmate with a parole hearing, *it provides him or her with all the rights set forth in Miller and Montgomery.*" (*Kirchner*, *supra*, 244 Cal.App.4th at p. 1416, italics added.) We disagree. As discussed in part III.C.3., *ante*, section 1170, subdivision (d)(2) affords many defendants sentenced to LWOP in violation of *Miller none* of the rights set forth in *Miller* and *Montgomery*, either because they are disqualified from obtaining relief under the statute or they do not meet the requirements for obtaining such relief. Further, 1170, subdivision (d)(2) requires *all* prisoners seeking to obtain resentencing for *Miller* error under the statute to prevail in a separate collateral proceeding before obtaining *any* of the rights guaranteed by *Miller* and *Montgomery*.

Further, the *Kirchner* court's primary reason for concluding that section 1170, subdivision (d)(2) provides an adequate remedy for *Miller* error appears to be its (mistaken) assumption that only through a section 1170, subdivision (d)(2) proceeding may a court consider a defendant's postconviction conduct. (*Kirchner*, *supra*, 244 Cal.App.4th at pp. 1416-1418.) The *Kirchner* court reasoned:

> "This procedure [outlined in section 1170, subdivision (d)(2)] of course responds to and remedies Justice Scalia's concerns [expressed in his dissent in *Montgomery*], which are implicitly recognized by

12      While we acknowledge that we ordinarily follow prior decisions from this court, we are not bound to do so. We may depart from such decisions when there are " 'good reasons' " for doing so. (*Lucent Technologies, Inc. v. State Board of Equalization* (2015) 241 Cal.App.4th 19, 35.)

26

the majority in *Montgomery,* that, after perhaps decades in prison, a defendant cannot logically or in fairness be returned to the same status as existed on the day of sentencing. . . . [¶] . . . [¶] Were we to find that section 1170, subdivision (d)(2) was not an adequate remedy at law and, thus, not a petitioner's exclusive remedy,[13] we would permit a petitioner to select whether to take advantage of section 1170, subdivision (d)(2) or *seek a direct resentencing limited to those factors existing at the time of the original sentencing.*" (*Id.* at p. 1417, italics altered.)

This reasoning is unpersuasive because there is nothing in *Miller*, *Gutierrez*, or *Montgomery* that suggests, much less states, that a trial court is *precluded* from considering evidence of a defendants' postconviction conduct in conducting a resentencing as a remedy for *Miller* error. On the contrary, a trial court is *required* to consider such evidence in determining a defendant's amenability to rehabilitation upon resentencing. (*Lozano*, *supra*, 243 Cal.App.4th at pp. 1137-1138.)[14] In *Lozano*, in response to a defendant's petition for habeas corpus, the People conceded that the defendant was entitled to a new sentencing hearing in light of *Miller*. (*Lozano*, *supra*, at pp. 1129-1130.) Upon resentencing, the trial court excluded evidence of Lozano's postconviction rehabilitation. (*Id.* at p. 1137.) The *Lozano* court concluded that this ruling constituted error, reasoning:

---

13   While portions of the *Kirchner* opinion appear to indicate that a prisoner must file a section 1170, subdivision (d)(2) petition "*before* resorting to habeas corpus relief," (*Kirchner*, *supra*, at p. 1419, italics added), this portion of the opinion suggests that section 1170, subdivision (d)(2), is a prisoner's "exclusive remedy," for *Miller* error. (*Kirchner*, *supra*, at p. 1417.) We conclude that both conclusions are incorrect, for the reasons stated in the text.

14   Indeed, the *Kirchner* court itself recognized this point, stating, elsewhere in its opinion, "the court in *Montgomery* made it unambiguously clear that, in collateral proceedings, a defendant's release may, under the Constitution, depend in part at least on his postconviction behavior." (*Kirchner*, *supra*, 244 Cal.App.4th at p. 1413.)

27

"In light of *Miller* and *Gutierrez,* we conclude the trial court could not categorically exclude Lozano's proffered evidence of postconviction rehabilitation. As *Gutierrez*, *supra*, 58 Cal.4th at page 1390, interpreted *Miller,* 'the trial court must consider all relevant evidence bearing on the "distinctive attributes of youth" discussed in *Miller* and how those attributes "diminish the penological justifications for imposing the harshest sentences on juvenile offenders." (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2465].)' All relevant evidence, in our view, includes what Lozano asserts is 15 years of rehabilitation in prison. Disregard of evidence of rehabilitation, under the circumstances presented here, is inconsistent with the focus required by *Miller* and *Gutierrez.*" (*Id.* at pp. 1137-1138.)

The *Lozano* court also specifically rejected the People's argument that evidence of postconviction conduct could be presented *only* in a petition for resentencing under section 1170, subdivision (d)(2):

"We reject the Attorney General's argument that Lozano's proper forum for introduction of evidence of postconviction rehabilitation is via a petition for resentencing under section 1170, subdivision (d)(2). *Gutierrez* effectively disposes of this contention in its recognition that amenability to rehabilitation must be considered at sentencing before imposition of an LWOP sentence. (*Gutierrez*, *supra*, 58 Cal.4th at pp. 1386-1387.)" (*Lozano*, *supra*, 243 Cal.App.4th at pp. 1137-1138.)[15]

There is also nothing in the text of section 1170, subdivision (d)(2) that manifests the Legislature's intent to create a procedure for providing a remedy for *Miller* error. Rather than providing a mechanism for recalling sentences imposed in *violation* of *Miller*, section 1170, subdivision (d)(2) provides a statutory procedure by which defendants whose LWOP sentences were *validly* imposed may seek to recall such

---

[15]     The *Kirchner* court did not cite *Lozano*, which was decided a little more than a month before *Kirchner*.

28

sentences by making the requisite statutory showing. However, the *Kirchner* court's holding requiring that the statute be used to remedy *Miller* error led the court to further conclude that the statute must be applied in a manner that finds no support in the text of the statute. Specifically, the *Kirchner* court imposed upon the *People* the burden of proof in a section 1170, subdivision (d)(2) / *Miller* remedy proceeding. (See *Kirchner*, *supra*, 244 Cal.App.4th at p. 1418 ["a petition under section 1170, subdivision (d)(2) will meet the requirements of *Miller* and *Montgomery*, only if, at both the trial court's review of the sufficiency of the petition (see § 1170, subd. (d)(2)(E)) and at any hearing ordered thereafter, the *People* bear the burden, as they would at any initial sentencing under *Miller* and *Gutierrez*, of showing that the defendant is one of the rare individuals for whom no possibility of parole should be provided," italics added].)[16]

There is no support for the *Kirchner* court's reassigning of the burden of proof to the People in the statutory language. On the contrary, section 1170, subdivision (d)(2) clearly places the burden of proof on the *defendant*. The statute provides that "[t]he *defendant* shall file the original petition with the sentencing court" (*id.*, subd. (d)(2)(B), italics added), requires that the petition contain the "*defendant's* statement" that various qualifying factors are true (*ibid.*, italics added), authorizes the People to file a "*reply* to the petition," (*id.*, subd. (d)(2)(D), italics added), and mandates that the court shall hold a

---

[16]     It is not clear whether the *Kirchner* court concluded that the People *always* bear the burden of proof in a section 1170, subdivision (d)(2) proceeding, or bear the burden only when the proceeding is used to remedy *Miller* error. Either result is problematic. The former is inconsistent with the statutory language. The later demonstrates the *Kirchner* court's misapplication of the statute in a context unintended by the Legislature.

hearing "[i]f the court finds by a preponderance of the evidence that the *statements in the petition* are true" (*id.*, subd. (d)(2)(E), italics added). Placing the burden of proof on the defendant is consistent with the statute's purpose of providing a defendant who is serving a *lawfully* imposed LWOP sentence with the opportunity to obtain a new sentence.

Finally, we are not persuaded by the *Kirchner* court's assertion that "[o]ur conclusion the remedy provided by section 1170, subdivision (d)(2) meets the requirements of *Montgomery,* does not conflict with the holding in *Gutierrez.*" (*Kirchner*, *supra*, 244 Cal.App.4th at p. 1419.) As the *Kirchner* court acknowledged, the *Gutierrez* court explicitly concluded "that the possibility that an LWOP sentence would later be recalled and a new sentence imposed under section 1170, subdivision (d)(2) did *not* cure the defect in the original sentence." (*Ibid.*, italics added.) Thus, the *Kirchner* court's conclusion that section 1170, subdivision (d)(2) *does* provide an adequate remedy for a *Miller* violation conflicts with *Gutierrez*. While the *Kirchner* court noted that *Gutierrez* was decided in the context of a direct appeal while Kirchner's case arose in the context of a collateral proceeding, there is nothing in *Gutierrez* that suggests that this distinction had any bearing on the court's decision. Further, given that the United States Supreme Court in *Montgomery* held that *Miller* must be given retroactive effect in collateral proceedings, we see no reason why this distinction should have any relevance in this context.

Accordingly, we decline to follow *Kirchner* and instead conclude that section 1170, subdivision (d)(2) does not provide an adequate remedy for a defendant seeking collateral relief for *Miller* error.

30

IV.

DISPOSITION

The trial court's order granting Berg's petition for writ of habeas corpus is affirmed.

AARON, J.

I CONCUR:

HALLER, Acting P. J.

31

McDonald, J., Concurring.

I concur in the opinion and write separately to acknowledge that after considerable reflection, although I signed the opinion in *In re Kirchner* (2016) 244 Cal.App.4th 1398, I agree with the opinion in this case including its provisions that are inconsistent with *In re Kirchner*.

McDONALD, J.